We move to the final case this morning, Brent v. Swallers. Good afternoon. A frequent litigator or a frequent counsel? Mr. Henderson? Yes, I am Peter Henderson, and I represent Brent Swallers here today. I think one of the important parts of this case is the standard that is to be used because it's difficult for judges sitting in judgment of their own recusal to apply it, and it's whether a well-informed observer would perceive a significant risk that a judge might resolve a case on something other than the merits. And so that means somebody who's not inside the system, but the general public, because Section 455 is about the integrity of the judicial system and making sure that the public perceives the judicial system as fair. And so when you take a well-informed observer and you ask the question, when the chief judge of a district is the victim of a crime, may a judge in that district under that chief judge preside over that trial? I think the answer is no. Well, we can't base it all on the public's understanding of how federal courts work or state courts work. In most state courts, I think most district judges would tell you we don't really care what the chief does. Well, and that's what's so difficult about this, is that we do have, I think a lot of judges, federal judges, would agree with that. Look, they're the chief judge. They're going to be there for six or seven years, whatever. But there are, you know, I think that there's a real concern about judges are people and want to work in an environment that is pleasant and where their work is to their satisfaction. Of course, the judge in this case, who was not included, does not own any property in Marion County and that's what he focused on when the case was written. That's right. So he was the beneficiary of the expungement order. He wasn't named in the lien, but he was the beneficiary of the expungement order. And actually, the expungement order, I didn't make a big deal out of this in the brief, but it was directed towards Marion County and any other counties where these liens were filed. But again, I think Judge Young took, in some ways, a sensible view and said, I don't own anything here. There's really no risk that I'm going to decide this. But that's not quite the standard. The standard is whether there's a perception of that risk from a well-informed observer. So we see there, unfortunately, aren't really cases that are very much on point. There certainly are cases about when the judge has a financial interest in the crime victim, whether the judge may preside over that. And what the court seemed to have said is, okay, it needs to be something more than a de minimis contact or a de minimis connection. But if there is a substantial connection to a victim of a crime, then the judge probably ought to recuse him or herself. The other concern I think that the judicial conference has identified is when there is a close professional relationship between judges, we need to be wary about certainly if a judge comes off the bench and appears as counsel, that's going to pose a problem. This is not quite as serious as that sort of problem. But we also have, I mean, this is such a factually specific question. I think probably if this question comes up in the Northern District of Illinois, we might not have a problem. We've got two divisions. We have over 30 judges. The Southern District of Indiana, in contrast, has four active judges. They all have to work very closely together as they face a judicial emergency as they're overwhelmed. And I think that adds to the perception of a risk. Are you aware in the Southern District of Indiana what the initial assignment of cases, how that's handled? The government points to their local rule, I think. I know they point to local rule, but it doesn't say much. Well, and I'm not aware. Perhaps that makes me more of an observer. Unlike other districts, in fact, I think in the Northern District of Indiana, it has to be much more random. Randomness is required. Exactly. Well, for example, in the Southern District of Indiana, Judge Young is going to get, I think, most cases coming out of Evansville. He's the only one there. So there's not quite as much randomness. But all four judges do sit in Indianapolis as well. And, of course, the chief judge has, so a well-informed observer would be able to see federal statutes that give the chief judge authority to assign particular cases that might be of particular concern. The other thing is, of course, there are duties that the chief judge has in just steering the ship. And Chief Judge Young and then Chief Judge Magnus Stinson have invoked those sort of authorities to bring in other judges from other districts to help with the caseload, in particular bringing in two magistrate judges from Wisconsin. There's a risk that a judge who has Judge Magnus Stinson as a victim will decide the case with that in the back of his mind. Whether that actually happened or not is not really the question. Mr. Henderson, Judge Young's involvement here is not as a result of Mr. Swaller's actions, right? Correct. Wouldn't that be some type of inference that Judge Young would not be biased against him, therefore? Right. I think that the bias is not necessarily against or for Mr. Swaller's because it may be that we have a judge who really wants to stick it to the chief judge. And the chief judge thinks that this is a real serious crime. He says, no, I'm not going to treat this very seriously. So it's not necessarily for or against a particular client. One thing that comes to mind from your question that the government raises is, well, doesn't this just open up avenues for people to recuse judges? And that's not the case here because this recusal is not based on actions that occurred after the prosecution was commenced. So, for example, if Mr. Swaller's were to do something and suggest to Judge Young that, you know, you need to get off the case, I'm going to file a lien again, you know, those sorts of threats. That's gamesmanship. That sort of thing doesn't require recusal. But all of the liens in this case occurred, of course, prior to the criminal prosecution because they prompted the criminal prosecution. Judge Pratt issued an injunction against keeping these liens on the state books, I gather, right? That's right. What was the basis of her authority to do that, do you recall? That's a good question. I don't recall that. I'm sorry, Judge, I didn't hear your whole question. I wondered what Judge Pratt relied on. Oh. Yeah. What statute she relied on. I'm not sure of that. I can certainly provide that answer. I know where to find it, but I don't know it off the top of my head. Thanks. Unless there are further questions, I'll reserve the remaining two minutes I have. Thank you, counsel. Mr. Reitz. May it please the Court. Brian Reitz for the United States. I would like to start with what I think Mr. Sweller's rhetorical point is about the chief judge. I think essentially he's proposing a rule that if the chief judge is a victim of a crime, the other judge is much to refuse. But there are two factual problems with that. First of all, that at the time when Judge Magnus Stinson was the victim, she was not the chief judge. Second, whenever Judge Young took the case and was assigned the case, he was actually the chief judge. And courts, including this court, have been reluctant to order recusal in the middle of a proceeding. And even if one were to accept the general rule that other judges underneath the chief judge must recuse, I don't think that would apply here because of the timeline of events. Let me ask you the question that I ask your opposing counsel. Under Local Rule 40-1, the assignment of cases, it says the clerk must assign a case to two judicial officers according to the method the court orders from time to time. That's not very clear. Right. It is, I suppose, regional and sequential. So Judge Young takes cases in Evansville. The other judges rotate. So I think it's Judge Barker and Pratt take cases in Indianapolis and New Albany. Judges Lawrence and Magnus Stinson also in Indianapolis, of course, and also Terre Haute. So part of it is where the judge is located. Yes, there is a regional component. Or at least has an assignment. Yes, there is a regional component. So the Southern District of Indiana has four federal courthouses, and no judge is assigned to each four. So they each have two, essentially, with all having Indianapolis. So there's a regional component and then the random sequential component. I don't know this, but I would have to presume the reason Judge Young was assigned to this case is because he was the one judge that wasn't named in any of the liens, which we think was an imminent. So it wasn't random, but he didn't have any interest in that? I don't know that, but I think that's a fair speculation. Is the general rule a random assignment? Yes, it's sequential, which is random, but with the regional component as well, of course.  And going back, I think assigning Judge Young was an imminently reasonable response to this unusual case, where if the one judge had... Who was the only judge not named as... Yes, and in general, what courts have said about district-wide recusal has to be highly exceptional circumstances. I know this court and other circuits have dealt with cases where there was a bomb threat or a bomb attempt at the federal courthouse, which you understand why that's highly exceptional and a judge might be inclined to punish that person harshly to protect their life and land. We had a case in this circuit many years ago. Well, actually, it was in the Sixth Circuit, but that's the point. Judge Cornelia Kennedy of the Sixth Circuit was assaulted outside her courthouse, and the case was tried as an assault on a federal officer in performance of her duties. The entire Sixth Circuit recused. I remember that because we had to go over and hear the case. Now, what's different? That that was a physical assault. Here, this defendant tried to tie up all the judge's property, Judge Magnus Stinson's property, make life really difficult for him. Isn't that assaultive? So I think certainly that case, because of the physical component, is much closer to a problem of 4455A, where here the liens are, of course, annoying and vexatious. I'm certain that the other colleagues, the judicial colleagues, didn't want that to happen, too. But there was really no threat, not only no violent threat, but besides maybe some annoyance and time spent, there's no real— That's why I'm interested and asked your brother, how did Judge Pratt, a United States judge, what was her authority to order the clerk of Marion County to expunge these things? Like my brother, I apologize. Because if there is a very easy way to do this, then your argument has a lot of sense to it. Because you say, look, this is an annoyance that all federal judges have to deal with. We do. Disappointed litigants trying to tie up all our property and everything. But there's an easy solution. There's a statute that allows us to take care of cranks like that. But if there isn't an easy way to do this, and Judge Pratt just got lucky, and we are at the mercy of county bureaucrats as to whether they're going to release these liens or not, then we've got a problem, don't we? Then you've got an assault. So I think there's a couple things I would like to say. First of all, again, I want to apologize. I don't recall the authority, but Judge Pratt did it, which I think is important, because we maybe can quibble about whether she got lucky. But as a matter of fact, they were easily expunged. So in this case, at least everybody acted as if they were easily expunged. It's not really the case that, of course, the Code Committee has already interpreted the ethical prohibition and said if it's all you're dealing with here is a crank acting out, you don't worry about it. There's no duty to recuse. I think that's a rather fair understanding. I can tell you in state court probably 35 years ago, an injunction was issued to the recorder not to take illegal liens such as this. So my mind was actually slipping back to my days in state practice. This came up in very similar circumstances, and I don't recall the statute, but there was a mechanism to do so. At that time there was no statute. There may be a statute now. It may have been an injunction. It was done after the lien was filed, and then the clerk was ordered not to take any further illegal liens. Marion County had, as I think it was Marion County, had a problem with people doing this a few years ago, and it may have been an injunction. Causa comitatus. Yeah, but they were the same types of liens, and the people were ordered, and the recorders were ordered not to take them. So again, I can't cite you to statutory authority, but I know that courts and the recorders have taken some steps to prevent that, but I just don't know necessarily about Judge Pratt's specific authority. But stepping back from that, I think the fact that she did do that and no one fought the expungement showed that this is more of an annoyance than a physical assault. From the trial judge here's perspective, his colleague really wasn't hurt by this because another judge had already taken care of this nuisance. Yes. I think nuisance, it's somewhat, again, it's annoying and it's a nuisance, but it's somewhat laughable. So it is certainly far afield of the bombs in the courthouse, and it's at least a few notches down from a colleague being physically assaulted. I think at that point in time a lot of people looking outside might feel that the punishment or the judge might treat that defendant more harshly, where here it's, again, the nuisance as opposed to the physical violence I think is a very big difference. And going back to the standard of what courts have usually held, I don't think an annoyance or a nuisance meets the highly exceptional circumstances warranting a refusal of the entire district court bench, and we think that the Southern District handled this properly and reasonably gave Assigned Judge Young, the one judge who was not a victim of this case, to handle it. And if there are no further questions, we would ask this court to affirm. Thank you. Thank you, counsel. Mr. Anderson? So, Judge Ripple, the answer to your question is actually in our appendix at page 43. That's the order that Judge Pratt entered. She found authority in the All Writs Act. In the All Writs Act. Yeah. I'm not certain that that gives the district judge the authority. It's in order to expunge these liens, but it certainly has never been challenged. One thing I'll say, again, in Judge Pratt's order, Judge Young is named. One of the cases from this court, Herrera-Valdez, talks about when a judge essentially is sitting in review of or has to deal with as an important part of the case a document in which he was earlier named, that causes some recusal problems. So in that case, it's Judge Derjagian as his time with the Immigration Service. But that order really, really didn't affect him, did it? He didn't think so, certainly. And, again, the test under 455A is whether there's a reasonable perception that he might be affected by that. So if there aren't any further questions, we'd just ask to reverse. Thank you very much. Thank you. Thank you, Mr. Henderson. It's nice to see you in a somewhat different position than you normally are, although we enjoy having you here in that situation as well. The case will be taken under advisement, and the court will be in session.